U.S. Embassy in the Philippines United States Embassy in the Philippines The next case is UNION STEEL et al. v. United States and Nucor Corporation, United States Steel Corporation, 2012, file 48 and 1315. The next case is UNION STEEL et al. v. United States and Nucor Corporation, 2012, file 48 and 1315. The issue that's framed by this court in Dongbu Steel still remains. I mean, there the court said whether it is reasonable under Chevron for Commerce to construe the identical statutory provision, 19 U.S.C. 167735, to have opposite meanings in investigations and reviews, where one, nothing in the statutory language indicates that different interpretations were intended, and two, this court has rejected the claim that the meaning of 167735 depends on the stage of the dumping proceeding. Well, Dongbu said Commerce needs to give reasons. Correct. Didn't they on remand? Well, Your Honor, that's interesting. Well, they gave reasons. It's true. They gave a remand and it was about 28 pages long. It is the crux of the appeal, isn't it? It is the crux of the appeal. This court has affirmed zeroing and affirmed not zeroing. That's not the issue. This court asked for reasons. The reasons given by the Commerce Department in the remand are exactly the reasons that have been given in prior cases. It was the same reasons that they gave this court in JTEC. They gave the reasons of, well, it's the difference between administrative reviews and investigations. It was the WTO. Yes, Your Honor. Well, the fact that they're consistent tells us maybe they're right. Well, that's one possibility. On the other hand, these are reasons that have been rejected by this court. Well, had we ever evaluated their reasons? I thought in Dongbu, we simply said, we don't hear you very clearly. Please come forward with those reasons. Well, I think in Dongbu, there are a couple of things. First of all, what this court said was, yes, you need to explain your reasons, but they have to be based in the statute. And in JTEC, what this court did... Yes, Your Honor. What the court says in Dongbu is commerce must provide an explanation for why the statutory language supports its inconsistent interpretation. In your brief, you interpret that as meaning, I'm quoting from your brief, you say the court in Dongbu and JTEC held that commerce must apply that interpretation consistently unless it can provide a reasonable explanation for why as a matter of statute. Correct. But it's not just a question of statutory interpretation, is it? What their court says in Dongbu is, tell us why the statutory language supports the inconsistent interpretation in light of everything that you can tell us. And there are lots of reasons potentially. Well, I think that's one interpretation. I don't agree with that, Your Honor. I think that that's what the court below said. The court below suggested that it's not a matter of statutory interpretation. This court, starting at Timken, then going through Corus, then going to U.S. Steel, then going to Dongbu, then going to JTEC, said, actually, it is a matter of statutory interpretation. It's a matter of the interpretation of 1677-35. Well, the question about statutory interpretation is a gloss, or perhaps it's the other way around, on the question of whether it's administratively arbitrary and capricious for them to do this. And the question isn't statutory interpretation per se, as Judge Wallach points out. It's a question of whether it's arbitrary and capricious for them to read the statute that way. And let's look at the reasons that they said that they could read the statute that way. Number one, it's the difference between administrative reviews and investigations, pointing to 1677-F1. Well, this court, and essentially that's what this whole issue of implicit offset and all, that's all you're talking about is 1677-F1. Now, if you look at that section, this court dealt with that issue on whether or not that is a sufficient reason for distinguishing 1677-35. In Corus, they then, in U.S. Steel, looked at it again and said, you know, we understand what you are saying. We understand that there are differences in investigations and reviews, in how you calculate the dumping margin. And the reality is, we dealt with that in Corus. It says nothing about zeroing. The issue is 1677-35. And 1677-35 applies equally to investigations and reviews, and there is no difference. And that's what gets to Clark v. Martinez, and it gets to the National Organization of Veterans Advocates, which this court cited in Dong Vu. Which, again, stands for the proposition that if you have a singular provision, and that singular provision applies without differentiation to a couple of – to other – to different situations. Clark's not even a Chevron case. Clark isn't a Chevron case. I agree with you, Your Honor, but that's not – You have to. Well, absolutely I have to. But the question is – Is that the way it is? Even if he was wrong, you have to. Well, let's leave that for a second. But that's a good point, because this is what the opposition is arguing. The fact that it's not a Chevron case isn't relevant, and it isn't relevant because what Clark says is what is reasonable or what is not reasonable with respect to interpreting a statute. But they didn't step through that analysis. Excuse me, Your Honor? They didn't go through a Chevron analysis. But, Your Honor, if to interpret a single statutory provision – It's not necessary to shout. Oh, I apologize, Your Honor. I was getting ready to take my hearing aids on. Your Honor, that's bad habit. I apologize. Shouting is not needed, but speaking up is appreciated. It's never been my problem. Okay. Let's get back to Clark. In the case of Clark, what Clark stands for is that, okay, you have a single statutory provision. You can interpret it to mean black. You can interpret it to mean white. But you cannot interpret it to mean both at the same time when the statute does not otherwise provide for that. Unless you've got good reasoning for why it should be black here and white there. And that's the question that's before us. For example, Mr. Cameron, when a court of appeals has said that you can do black and white. And what Dong Vu and JTAC stood for is, yes, the court of appeals said you can do black and you can do white. And Dong Vu was remanded for the specific reason that the court of appeals said, you know, we do have to do a separate cover on review as to whether it is reasonable to do black and white at the same time. Tell us why. Tell us why if you can. And not only that. And tell us why they failed. They failed because they gave you the same argument that they gave you in JTAC. That's okay. We hear the same arguments. Why aren't they persuasive? Because this court has already determined that 1677 FD1 or 1D doesn't address anything with respect to zeroing. And that 1677 35 doesn't. The WTO doesn't address the issue because the WTO implementation can only be valid if indeed. But Mr. Cameron, you asked Commerce to address the issue. The fact that nobody else addressed it proves what? I mean, you're arguing nobody else has addressed it. No, what I'm suggesting to you is that after you look at the analysis, they have not advanced the issue and said why it is that 1677 35 can be interpreted in diametrically opposite ways with respect to that statutory provision. Which seems to me to have some merit, whether it's enough is the question that the court has to decide. But they made the argument that where you have the average against a one month. Sure. Review. Maybe zeroing makes sense. Yes, they made that argument. What's wrong with it? Well, because that's the argument that was rejected by this court with respect to chorus, because the average the one month average in the annual was specifically addressed in the in chorus. And chorus said, you know, we understand that. But that does not make a difference between investigations and reviews. And therefore, we're not going to do a separate Chevron argument that we have decided this issue previously. And so we shouldn't even be talking about it. No. My argument is that this court has addressed the issue of whether or not the distinction between investigations and reviews and the methodology in the investigations and reviews. Yes, this court has addressed it repeatedly. You address it in chorus. You address it in U.S. Steel and your honor, you address it in JTAC. And the question was, do you have anything else? Because those distinctions that you have given don't illuminate the issue of whether or not zeroing. Mr. Cameron, it wasn't necessarily you have anything else. It was do you have the same thing in greater depth and greater depth of explanation, which the other side is saying we gave you your honor, what they have given you is, I mean, assuming we're. Can you argue the merits of their distinction and tell us that it doesn't make sense? The merits of their distinction don't make sense because all you want to talk about an implicit offset. And they say in the fact that an implicit offset is somehow consistent with the concept of zeroing of not zeroing an implicit offset. What they did is they defined how you calculate an average that has nothing to do with statutory interpretation. They're suggesting that there was some congressional intent that's buried here. And the reality is they have proven nothing. What they have done is they went one level down and gave you an explanation of how margins are calculated. Well, I understand how margins are calculated. How about avoiding masking dumping? Avoiding masking dumping is an interesting question, your honor. But, again. The question from the bench is presumed to be interesting. Julie noted, your honor. It's well taken. You're into your rebuttal. Okay. Quick answer. Quick answer. The answer is that, yes, mask dumping is relevant. And there's a specific provision that was made for mask dumping. When you're talking about implicit offset, that includes every calculation. Mask dumping, you have to make specific findings. And there is a specific provision to deal with it. So that really is a non-issue, your honor. And thank you. And I will reserve the rest of my time. I appreciate your patience. And we'll save it. And the government, Mr. Preheim, is going to take 11 minutes. And two private parties are going to take two minutes each. So we'll hear from the government. Thank you. Good morning. May it please the court. The court should affirm the Court of International Trade's decision. Congress simply hasn't spoken to the question of zeroing at all in the statute. Congress could have said, commerce, you must zero in all circumstances, or commerce, you can never zero, or commerce, you can zero in some circumstances, but not others. But Congress did no such thing. It left that question to the agency's expertise. And what commerce has reasonably determined is that it zeroes when using the average-to-transaction methodology but not when using the average-to-average methodology. And inherently, that makes sense because the average-to-transaction methodology is more specific. It's focused on individual transactions. That simply isn't true in the average-to-average methodology. Also, there's no inherent offsetting on the export price side in the average-to-transaction methodology because you aren't averaging anything in that methodology on the export price side of the equation. Commerce's explanation is not, as counsel suggested, the same as provided in JTAC. JTAC, the explanation was two paragraphs where commerce simply said, there are differences between investigations and reviews, and we're zeroing in reviews but generally not in investigations. Here, over the course of some, not just two paragraphs, but 20-plus pages, commerce went into exhaustive detail about why those different comparison methodologies matter, why they make a difference. And this court in the U.S. Steele case also noted that those methodologies matter and make a difference, which I'd like to talk about in a minute. But so commerce has provided the explanation ordered by this court in Dongbu and JTAC. Now, Union misunderstands the Chevron standard. The explanation just has to be reasonable. It doesn't have to be tied to the statute. If it had to be tied to the statute, we would be in Chevron step one, not Chevron step two. Brand X, the Supreme Court addressed this issue head-on and said, agency and consistency is not a basis for declining to analyze the agency's interpretation under the Chevron framework. But in any event, commerce did in fact tie its explanation to the statute, and that is to 1677F1 and the different comparison methodologies that are provided in that section. Now, another mistake that Union makes is they rely on this court's decision in Corus from 2005. Corus was concerned primarily with whether zeroing was prohibited under the statute. It didn't address commerce's interpretation issue here. Nowhere in Corus does this court say, no, commerce can't zero in some instances and not in others. And nowhere in our briefs did we ever make that argument. Moreover, if Corus precludes what commerce did here, what would have been the point of a remand in JTAC and Dongbu? Moreover, if Corus precludes what commerce did here, what would have been the point of this court's holding in U.S. Steel, which addressed the exact same interpretation that's at issue in this case? That is, in U.S. Steel, this court was faced with commerce's interpretation of zeroing in some instances and not in others. Zeroing in one comparison methodology and not in others. And this court said, well, look, the statute doesn't say anything at all about zeroing, and we think commerce's approach is reasonable. It may well be that Congress had been signaling to commerce that it can zero in some situations, but not in others by providing for the different comparison methodologies in 1677 F1. Finally, if this court were to say here that commerce can't zero, that commerce can't zero in this case, we would have one case, U.S. Steel, that tells commerce, you can zero in different circumstances. You can zero in one methodology, but not in another. And then this court would be saying, here, no, commerce, you can't do that. We respectfully submit that that simply would not make sense. This court should affirm the trial court's decision. Thank you, Mr. Preheim. Mr. Garish? Thank you. May it please the Court, I'd like to address one of the statutory basics for zeroing in administrative reviews but not in investigations, and that is the provisions in Section 1677 F1D. Congress provided for commerce to use the average-to-average methodology in investigations, but realized that that would conceal targeted dumping. So what did they do? They provided for the average-to-transaction methodology to be used in both investigations and administrative reviews to address targeted dumping. But in order to address targeted dumping, it's not enough to use the average-to-transaction methodology. You also have to use zeroing. Why is that? Well, because without zeroing, you would still have dump sales being offset or amassed by higher-priced non-dump sales. So that, without zeroing, you would be negating the congressional intent to address targeted dumping. In addition, without zeroing, you would get the same exact marginal result, whether you use the average-to-transaction methodology or the average-to-average methodology. So you would be rendering the average-to-transaction provisions in the statute completely meaningless. You would be not only negating congressional intent to address targeted dumping, but you would be reading those provisions right out of the statute. And, in fact, this court recognized that in the U.S. Steel decision. This court rejected the argument that the provisions of the statute would be rendered meaningless without zeroing by recognizing that Commerce was going to continue to use zeroing in the average-to-transaction context and, therefore, get a different result than it would in the average-to-average context. And it found that that was not only permissible to use those dual methodologies under the different comparisons, but it found that that was consistent with congressional intent. So the use of zeroing in administrative reviews and not in investigations is justified by the fundamental statutory distinctions between the two different comparison methodologies as used in the two different proceedings. And we would ask you to uphold the use of zeroing by Commerce in this administrative review. Thank you, Mr. Darish. For questions, we'll hear from Mr. Brightfield. Good morning, Your Honors, and may it please the Court. I'll just make two fundamental points that have already been brought up this morning. First of all, Commerce did give reasons. And second of all, this was not just a question of statutory interpretation. Commerce did give reasons. It is reasonable for Commerce to have treated this same statutory language differently in investigations and reviews because the statute itself sets up two different approaches for investigations and reviews. The two proceedings are different in several fundamental respects, as Mr. Creheim already mentioned, and therefore it's reasonable for Commerce to adopt practices that reflect those differences, even in terms of how to interpret a vague statutory term that covers both types of proceedings. How does zeroing reflect those differences? It reflects those differences that are embedded in how investigations are conducted versus how administrative reviews are conducted. Investigations designed to assess exporters' overall pricing behavior, which is why average-to-average comparisons are warranted. Reviews designed to calculate actual margins and to address as much of the dumping as possible, which is why average-to-transaction comparisons are warranted. So Commerce did give reasons, and its interpretation resolves the ambiguity in the statute. Secondly, this is not just a question of statutory interpretation. As the lower court said, and as your honors have said, this court has already held in ThyssenKrupp that Commerce, in altering its practice in response to an adverse WTO determination, may reasonably decline to take any action beyond what is necessary for the department to come into compliance. And that includes applying a different approach to different types of proceedings where warranted. As the lower court said, Commerce has wide latitude in bringing its practices into WTO compliance, and Congress even foresaw this in the Statement of Administrative Action that this type of thing might occur. So thank you very much, your honors. Thank you, Mr. Brightfield. Mr. Cameron has little time for rebuttal. How much time do I have now? I'm sorry? How much time do I have? 3.17. 3.17. Thank you. A couple of quick points. First, it was observed by Judge Wallach that Clark v. Martinez is not a Chevron case. Obviously, it's not. This court in Dongbu referred to the case of National Organization of Veterans. And in that case, it's a Chevron case, and it followed the same precept of Clark v. Martinez, in which this court said that, actually, it is not reasonable for the Veterans Administration to construe substantially similar statutory provisions differently. And the VA ultimately complied by reforming their... Mr. Cameron, before you go any further, I flipped open Mr. Garish's brief. Page 14 at the bottom, he says, it's a recognized fact that absent zeroing, average-to-average method and average-to-transaction method will always produce the exact same margin result. Do you agree with that? I do not agree with that. I think it is true that it does in the case of investigations. It does not in the case of reviews. And if you will look at the appendix that was provided in the opinion by Judge Rustani, it's the last pages in our brief, you will see that they don't end up with the same result. It is true in investigations. It is not untrue in reviews. Isn't that the key issue here? Isn't the key issue, and I haven't heard much discussion of it, is whether there is a fundamental fairness in the economics of applying zeroing in one case and not applying it in the other. I've heard nobody talk about that. Well, Your Honor, zeroing is a device to increase dumping margins. I'm not sure the fundamental fairness gets into it. I think that the issue is whether or not they can interpret it the same way. But historically, they interpreted zeroing to apply to both investigations and reviews. That's true. And then the department changed its position in the 2006 final modification to apply it only to investigations. Now they've applied it to reviews too. But I think you may be getting to this question of, well, they say that investigations deal with overall economic behavior and the reviews deal with specific transactions. There's nothing in the statute or the legislative history to support that. And not only that, the legislative history specifically provided, I want all detailed transactions. I don't think Congress thought about it. The question is whether we need to think about it in determining whether commerce is acting in an arbitrary way. Your Honor, they didn't think about it. I agree with that in a sense. They didn't think about it in what sense. They didn't think about it in the sense that, look, we have a single provision, and it applies to investigations and reviews. We have data sale. What's a data sale? Does data sale depend upon whether it's an investigation or review? No. Why is it that the Commerce Department applied zeroing consistently in investigations and reviews for 20 years? Because it was the same provision. That was their policy. And that was what was assumed. It was assumed that it was unitary. And that's really the problem. The problem is that it's a single provision that applies to both. And that's why when this court has looked at it previously, it said, well, look, I understand there's a difference between an investigation and a review. But let me ask you a question. Does that go to the question of whether or not zeroing is appropriate in investigations and reviews? And I think that the answer to that question is no. It doesn't. And that's exactly what this court held in U.S. Steel. Thank you, Mr. Cameron. I think we have your argument. If there are no questions, we'll take the case. Thank you, Your Honor.